| | |
|---|---|
| 1 | MANATT, PHELPS & PHILLIPS, LLP  RONALD S. KATZ (Bar No. CA 085713) | KIRBY NOONAN LANCE & HOGE LLP  CHARLES T. HOGE (Bar No. CA 110696) |
| 2 | email: rkatz@manatt.com  ROBERT D. BECKER (Bar No. CA 160648) | email: choge@knlh.com  ETHAN JACOBS (Bar No. CA 173959) |
| 3 | email: rbecker@manatt.com  SHAWN G. HANSEN (Bar No. CA 197033) | email: eboyer@knlh.com  350 10th Ave., Suite 1300 |
| 4 | email: shansen@manatt.com  1841 Page Mill Road, Suite 200 | San Diego, CA 92101  Telephone: (619) 231-8666 |
| 5 | Palo Alto, CA 94304  Telephone: (650) 812-1300 | Facsimile: (619) 231-9593 |
| 6 | Facsimile: (650) 213-0260 | |

7   *Attorneys for Plaintiffs*
    FUHU, INC. & FUHU HOLDINGS, INC.

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                    12CV2308 WQH WVG

11

| | | |
|---|---|---|
| 12 | FUHU, INC. & FUHU HOLDINGS, INC. | **CIVIL COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; FRAUD; TRADE SECRET MISAPPROPRIATION; CONVERSION; FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A); TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(A); STATE TRADEMARK INFRINGEMENT UNDER CAL. BUS. & PROF. CODE § 14335; COMMON LAW TRADEMARK INFRINGEMENT; COMMON LAW TRADE DRESS INFRINGEMENT; TRADEMARK INFRINGEMENT; FALSE ADVERTISING UNDER THE LANHAM ACT; COMMON LAW UNFAIR COMPETITION; UNFAIR COMPETITION UNDER CAL. BUS & PROF. CODE § 17200; UNJUST ENRICHMENT; REPLEVIN** |
| 13 | Plaintiffs, | |
| 14 | vs. | |
| 15 | TOYS "R" US, INC. & TOYS "R" US – DELAWARE, INC., | |
| 16 | Defendants. | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | **DEMAND FOR INJUNCTIVE RELIEF AND JURY TRIAL** |
| 23 | | |
| 24 | | **[APPLICATION FOR INJUNCTIVE RELIEF TO BE FILED FORTHWITH]** |
| 25 | | |

26       Plaintiffs Fuhu, Inc. and Fuhu Holdings, Inc. (collectively, "Fuhu") allege as follows for

27   their complaint against Defendants Toys "R" Us, Inc. and Toys "R" Us – Delaware, Inc.

28   (collectively, "TRU").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2                                            FUHU'S ORIGINAL COMPLAINT

**PARTIES**

1. Plaintiff Fuhu, Inc., is a California corporation with a place of business at 909 N. Sepulveda Boulevard, Suite 540, El Segundo, California 90245.

2. As alleged further below, Fuhu, Inc., is the creator of NABI, the world's first full-featured Android tablet made especially for kids.  Fuhu's investors include, among others, Acer, the global PC and notebook giant, and Foxconn, one of the largest and fastest growing manufacturing services providers in the world.

3. Plaintiff Fuhu Holdings, Inc., is a California corporation with a place of business at 909 N. Sepulveda Boulevard, Suite 540, El Segundo, California 90245.

4. Fuhu Holdings, Inc., is a wholly-owned subsidiary of Fuhu, Inc., that owns intellectual property rights at issue in this action.

5. Defendant Toys "R" Us, Inc., is a Delaware corporation with a principal place of business at One Geoffrey Way, Wayne, New Jersey 07470.

6. On information and belief, Toys "R" Us, Inc. owns and licenses Toys "R" Us and Babies "R" Us stores in the United States and foreign countries and jurisdictions.

7. Defendant Toys "R" Us – Delaware, Inc., is a Delaware corporation with a principal place of business at One Geoffrey Way, Wayne, New Jersey 07470.

8. On information and belief, Defendant Toys "R" Us – Delaware, Inc., is a wholly-owned subsidiary of Defendant Toys "R" Us, Inc., and operates Toys "R" Us stores in the United States, Canada and Puerto Rico; Babies "R" Us stores in the United States; and Internet businesses in the United States and Canada.

**THE NATURE OF THE ACTION**

9. To reverse its downward business trajectory, on September 10, 2012, TRU announced with great fanfare its "proprietary" tablet for children, TABEO.  Attached as Exhibit A is a typical news report on that announcement from the Wall Street Journal.  A TRU vice-president was quoted in the article as follows: "It is our strategic position to offer products that you can't find anywhere [else] … ."

10. Exhibit A notes that this was TRU's "…first move into house brand electronics...".

1    11.    This lawsuit is about how TRU was able to make this complex and difficult move:

2    by breaching a strict non-disclosure agreement ("NDA") (a true and correct copy of which is

3    attached as Exhibit B)[1], by misappropriating the trade secrets of Fuhu, and by infringing the

4    intellectual property rights of Fuhu, the first-mover in this area and TRU's previous partner.  TRU

5    entered into direct competition with Fuhu, shamelessly using Fuhu's confidential information

6    obtained after fraudulently becoming Fuhu's exclusive distributor in an agreement signed in

7    October, 2011 ("Exclusivity Agreement") (a true and correct copy of which is attached as Exhibit

8    C)[2], promising millions of dollars worth of marketing, merchandising, and sales.

9    12.    Fuhu's product, NABI, showed every indication of becoming a blockbuster for

10   TRU.  For example, after NABI was introduced, TRU's website sold out within a few weeks of

11   starting to accept pre-orders.  One press report stated,

12          It's not too soon to predict what the top-selling tech toy is likely to be this
            holiday season, and that would seem to be the Nabi Kids Tablet, on Android.
13
            It won't even arrive in the stores at Toys "R" Us until next week, but the
14          Nabi is already reportedly the chain's top-selling product in the electronics,
            gaming and learning categories, based on pre-orders.[3]
15

16   TRU reported that pre-orders were coming in at the rate of 1,000 every three hours at the time it

17   stopped accepting pre-orders and that the demand would support sales of 20,000 NABI units per

18   day on the TRU website.

19   13.    Instead of promoting NABI per its agreement with Fuhu, TRU did virtually no

20   promotion.  TRU ordered the NABI in quantities that were commercially unreasonable given the

21   reported demand.  In the end, TRU's total orders for the 2011 holiday season were hardly more

22   than what TRU said it could sell on its website in a single day.

23   14.    TRU's failure to perform its obligations led Fuhu to terminate the exclusivity of

24   TRU's distribution rights in January, 2012.  But the reason for TRU's unreasonable behavior only

25   became clear with the September 10, 2012 announcement of the TABEO.

26

27   [1] A motion seeking leave to file Exhibit B under seal is filed concurrently herewith.
     [2] A motion seeking leave to file Exhibit C under seal is filed concurrently herewith.
28   [3] "Kids Get Their Own Tablet on Android," 7x7.com, December 2, 2011, available at : http://www.7x7.com/tech-gadgets/kids-get-their-own-tablet-android (accessed on September 22, 2012).

15.     TRU has used and continues to use Fuhu's confidential information, trade secrets, and other intellectual property to prepare, market, and sell TABEO.  TRU leveraged its exclusivity on NABI to simultaneously frustrate Fuhu's business by failing to market, merchandise, promote, and order in a commercially reasonable manner while preparing TABEO.

16.     While developing TABEO, and after Fuhu terminated the Exclusivity Agreement, TRU began to sell third party NABI competitors such as the KURIO tablet.  Such sales gave TRU a stop gap between NABI and TABEO, but the poor quality of these competitors generated, on information and belief, return rates of at least 15%-25%.  Such return rates hurt the entire market category, including NABI.  Further, on information and belief, TRU communicated Fuhu's trade secrets to one or more of these competitors.

17.     NABI's return rate is a comparatively miniscule 3%-5%.  Lower return rates are better for the retailer and are generally indicative of a product that better meets customers needs.

18.     The TABEO product and related marketing bear a striking and not coincidental similarity to Fuhu's NABI product and the collateral proprietary information that Fuhu disclosed to TRU under strict confidentiality.  TRU used Fuhu's trade secrets and confidential information to start selling TABEO, which systematically attempts to replicate the NABI experience, far earlier than TRU could have done otherwise, if at all.

19.     TRU frustrated the success of NABI in the 2011 holiday season by failing to order sufficient quantities to meet demand and failing to perform agreed-upon marketing and merchandising.  Now, TRU is poised to launch TABEO for the all-important 2012 holiday shopping season, with the product featured on the TRU websites, with pre-sales already under way, and with the product announced to be available on October 21, 2012.  TABEO not only is confusingly similar to NABI's iconic butterfly shape reflected in the Nabi trademarks and trade dress, but also TRU's advertising and promotional materials are derived from the business plan Fuhu shared with TRU on a basis of strict confidentiality.  Furthermore, TRU infringes Fuhu's trademarks and engages in false advertising in its marketing and merchandising of TABEO.

20.   In short, TRU's revealed business strategy for TABEO is a copy of the confidential and proprietary business strategy that Fuhu developed and disclosed to TRU in strict confidence in reliance on TRU's obligations under the NDA and Exclusivity Agreement.

21.   The launch of TABEO, including, without limitation, currently ongoing marketing, advertising, and pre-sales, and the manner in which TRU is conducting that launch, will, if not enjoined, cause irreparable harm to Fuhu, which will continue to lose its first-mover advantage and the goodwill and market share that go along with it and will suffer irreparable harm in the form of customer confusion regarding the source of the TABEO and NABI products.

22.   By this action, Fuhu seeks to enjoin and end TRU's illegal conduct and to vindicate all of Fuhu's legal rights.

## JURISDICTION AND VENUE

23.   This is an action with federal claims for trademark infringement, trade dress infringement, false advertising, and unfair competition under the Lanham Act, and with state law claims for, inter alia, state and common law unfair competition, misappropriation of trade secrets, breach of contract, breach of the covenant of good faith and fair dealing, fraud, conversion, and replevin.

24.   This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121.

25.   This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332. There is diversity of citizenship between Fuhu and TRU, as the citizenship of Fuhu is California, and the citizenship of TRU is Delaware and New Jersey. The value of the matter in controversy is in excess of $75,000.

26.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because of the exclusive jurisdiction provision of the parties' Exclusivity Agreement (attached as Exhibit C).

**SUBSTANTIVE ALLEGATIONS**

**Fuhu's Mission and Vision**

27.     Fuhu is the creator of products sold under the trademarks NABI, FOOZ KIDS, URDRIVE, URSPIN, URFOOZ, SPINLETS, SPINLETS+, and FUGOO.  Fuhu is a leading provider of cloud-served software, applications, and services that are dedicated to creating deep and engaging user experiences on a range of consumer devices.  Fuhu was the first-mover in the market for full-featured Android tablets made especially for kids.

28.     Fuhu's mission is to be the world's leading designer, seller and innovator of "thoughtful" consumer products and services for children, sold through the world's biggest and best retailers.  Fuhu's vision for accomplishing this mission is to bring innovation and inspiration to children around the world through "thoughtful" experiences in education and entertainment. Fuhu defines "thoughtful" as: 1) socially responsible, 2) doing good things, 3) making things right, and  4) making a difference in people's lives.

**Fuhu's Development of NABI**

29.     In about May, 2010, Fuhu began development of its FOOZ KIDS software. Fuhu's FOOZ KIDS team comprises approximately 35 individuals, who have worked continuously on the product from inception through the present.  FOOZ KIDS is among the core experiences included in the NABI product and ecosystem.  Fuhu's FOOZ KIDS team consists of internal and external resources in areas including, without limitation, business development, marketing & public relations, engineering, content management, creative, and product.

30.     Fuhu's work on FOOZ KIDS progressed into development of the NABI tablet device and ecosystem.  Fuhu's NABI team comprised 62 individuals at inception and has grown to 114 individuals as of the date hereof.  While NABI leverages the investment in FOOZ KIDS, it builds upon it significantly. Fuhu's NABI team consists of internal and external resources in areas including, without limitation, business development, marketing & public relations, engineering, content management, creative, and product.

31.     By early 2011, Fuhu was refining a strategy for NABI that would create and give Fuhu a first-mover advantage in a new market segment for kid-oriented full-featured Android

1    tablet computers. The original NABI was introduced in the fall of 2011, and the next generation

2    NABI 2 was introduced in the summer of 2012.

3         32.    Fuhu's NABI tablet strategy combines a first-mover advantage resulting from a

4    unique branded ecosystem encompassing hardware, software, bundled content and services, and

5    other confidential and proprietary differentiators and advances.

6         33.    NABI's web-accessible parental dashboard is an easy-to-use way for parents to

7    ensure their children's safety and security. With a password protected log-in, parents are able to

8    view a pre-screened and kid-safe collection of over 100,000 websites, videos, games and crafts

9    for various age range and gender combinations.

10        34.    The NABI products include a line of quality, kid-focused accessories that can be

11   personalized and fully integrated with the NABI tablet.

12   **NABI 2 Features & Benefits**

13        35.    The second generation NABI tablet — NABI 2, was introduced in the summer of

14   2012. Powered by NVIDIA's Tegra 3 Super 4-PLUS-1™ Quad Core with 5th Battery Saver

15   Core, at launch NABI 2 was the fastest, most powerful tablet in the world made just for kids.

16   Fuhu launched NABI 2 with its proprietary MONARCH operating system overlay that introduced

17   over 150 new features, focused in Learn, Play, Grow, For Life.

18   **Fuhu's Iconic Butterfly Shape, Trademarks, and Trade dress**

19        36.    An integral part of Fuhu's development of its NABI products and ecosystem

20   included its creation of fanciful words and a corresponding iconic shape that could be reflected

21   cohesively in its trademarks and trade dress as presented across its entire product line and

22   ecosystem.

23        37.    In this vein, Fuhu incorporated the abstract concept of a butterfly – a creature

24   intrinsically appealing to both children and adults, early developing the MONARCH trademark

25   for its operating system, and later developing the unique NABI trademarks for its tablets. "Nabi"

26   means "butterfly" in Korean.

27

28

38.     Beginning at least as early as September 1, 2011, and continuing to the present time, Fuhu owns, has used and continues to use one or more of the following trademarks in connection with its NABI products and ecosystem, marketed throughout California and the United States:

| Mark | Federal Application No. | Image |
|---|---|---|
| NABI (word mark meaning "butterfly" in Korean) | 85/426283 (First Use In Commerce 9/01/2011) | --- |
| NABI. YOUR TABLET. YOUR WORLD. | 85/728299 (ITU filed 09/13/2012) | --- |
| NABI & Design | 85/564634 (First Use In Commerce 9/01/2011) |  |
| Design Only (Compressed Butterfly) | Common Law (First Use In Commerce 9/01/2011) |  |
| Design Only (Extended Butterfly) | Common Law (First Use In Commerce 9/01/2011) |  |

Pages printed from the online database of the U.S. Patent and Trademark Office reflecting the marks in the chart that are the subject of federal trademark applications are attached as Exhibit D.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2

8

FUHU'S ORIGINAL COMPLAINT

39.     In addition to the distinctive NABI trademarks, Fuhu's NABI products have consistently and continuously featured distinctive, non-functional trade dress.  Specifically, all NABI tablets feature a removable "bumper" that fits snugly around the outer edge of the tablet. The NABI bumpers come in a range of colors, but all feature exaggerated, flared corners, giving the NABI tablet an original, unique, soft, and friendly look, reminiscent of the four wings of a butterfly.  An image of the NABI bumper with this butterfly design trade dress and of the NABI tablet wearing the bumper is below.



40.     To further emphasize and tie the iconic butterfly shape with its NABI products, Fuhu often displays one or more of its NABI trademarks in conjunction with the butterfly trade dress, including, for example, by featuring the NABI & Butterfly Design trademark on the bumper of each NABI tablet, near the "wings" embodied in the butterfly trade dress, as illustrated above.

41.     Fuhu not only incorporates its iconic butterfly shape into its distinctive butterfly trade dress as embodied in the NABI bumpers themselves, but the company consistently has highlighted its butterfly trademarks and trade dress in its distinctive product packaging. Specifically, the box for the NABI tablet, which is delivered wearing the NABI bumper, features the outline of the NABI bumper including the butterfly trade dress, in actual or nearly actual size on the box top.  The iconic butterfly design also appears in a second, smaller line drawing on the outside left corner of the product package.  Images as featured on the product package are below.



(Product Package / Box Top)



(Product Package / Long Side)

42.     Moreover, Fuhu cohesively presents its iconic butterfly shapes in advertising and promotional materials, thereby seamlessly connecting its butterfly design trademarks with its butterfly trade dress.  For example, Fuhu's "The World" television advertising segment concludes with the camera panning back from within the NABI tablet world, into the real world.  In this

television advertisement, the NABI tablet world, bounded by the NABI bumper, morphs to become one with the real world, as with a virtual twist of the butterfly shaped bumper, the NABI & Butterfly Design Trademark appears at the center of the screen.  Still images of the twisting action featured in this "The World" television segment follow:



MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2

11

FUHU'S ORIGINAL COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2

13

FUHU'S ORIGINAL COMPLAINT

43.     Fuhu also features the iconic butterfly design in its brochures for the NABI tablet, which are printed on stock cut in the shape of, and thus embodying, the iconic shape of the butterfly design trademarks and butterfly trade dress.  Images of some of the pages of such a brochures are below.  The full brochure can be seen in Exhibit F.



44.     Fuhu has expended substantial effort and financial resources in promoting and advertising the NABI products and the iconic butterfly shape of its trademarks and trade dress in magazines, sponsorships, online advertising, social networking and through television commercials broadcast throughout the United States.   In addition, the iconic butterfly shapes

have been prominently featured on the popular website www.nabitablet.com and on Fuhu's

popular Facebook page, among others. *See, e.g.,* www.youtube.com/nabitablet and

www.facebook.com/nabitablet. Also, since their inception, the NABI products, including the

NABI tablet and bumper, which embodies the iconic butterfly shape and trade dress, have

received a significant amount of unsolicited press and have been the subject of numerous articles

in major publications, including The New York Times, Time, PC Magazine, Forbes, Wired, USA

Today, and others. A non-exhaustive list including links to such publications and on-air

commentary can be found on the NABI website at http://www.nabitablet.com/press/news and

http://www.nabitablet.com/press/video, true and correct print outs of which are attached hereto as

Exhibit E. Fuhu also spent approximately $1,000,000 on development and air time costs for

NABI television commercials (accessible at: http://vimeo.com/45788051,

http://vimeo.com/32607796, and http://vimeo.com/28996337), that (to date) ran on or about July

16, 2012, August 6, 2012, and August 13, 2012 on networks including Cartoon Network, CBS,

Disney XD, Nick Toons, Sprout Network, The CW, and Nickelodeon. At least one such

advertisement, "The World", is available for view by the public online at www.nabitablet.com.

45.     Since 2011, Fuhu's promotional efforts have generated significant United States

sales of tens of millions of dollars for products bearing or incorporating the iconic butterfly shape.

46.     The iconic butterfly shape of Fuhu's trademarks and trade dress is nonfunctional.

Moreover, by virtue of Fuhu's consistent and exclusive use of the iconic butterfly shape, not only

in connection with the NABI bumpers and as worn by the NABI tablets, but also as echoed

throughout the NABI products packaging, brochures, and animated television advertising

segments, the butterfly design trademarks and the butterfly trade dress have acquired secondary

meaning: they have become associated in the minds of the consuming public with Fuhu and its

high-quality tablets and related products, and they serve to identify these products as emanating

solely from Fuhu.

**Disclosures by Fuhu to TRU**

47.     On about September 7, 2011, Fuhu and TRU met at TRU's Time Square store in

New York City. Fuhu provided TRU with the NABI tablet brochure and explained Fuhu's

1  business case and rollout plans.  Fuhu also shared its NABI strategy with TRU, including why

2  and how Fuhu sourced a general product and made it a unique, branded experience with the

3  iconic butterfly design, including as reflected in its butterfly trademarks and trade dress, as well

4  as the importance of preloaded content and an instant on experience for  reducing return rates.

5  Fuhu also provided details on the accessories Fuhu was planning to roll out with NABI.  TRU

6  expressed an interest in having exclusive rights to retail NABI.

7      48.  On information and belief, prior to the September 7, 2011 meeting, TRU had

8  begun exploring the possibility of developing its own kid-oriented tablet computer, but TRU

9  never disclosed this fact to Fuhu.

10      49.  On about September 19, 2011, Fuhu and TRU met again, this time at Fuhu's

11  offices in El Segundo, California.  At this meeting, Fuhu shared with TRU trade secrets regarding

12  NABI and demonstrated an actual NABI tablet in detail.  Fuhu reviewed again its business

13  strategy and all the features, functions, and benefits associated with this business model and its

14  execution in connection with NABI.  Fuhu again provided TRU with Fuhu's NABI brochure and

15  showed examples of accessories Fuhu planned to take to market.  Fuhu shared the NABI product

16  and ecosystem and the unique focus targeted at a core audience, making the case that Fuhu's

17  strategy was superior to that of any other tablet company in the market at the time.  TRU again

18  expressed an interest in being the exclusive retailer for NABI and asked if Fuhu could bring the

19  NABI tablet to TRU's headquarters offices in Wayne, New Jersey, to show their electronics

20  department leads.

21      50.  On about September 30, 2011, Fuhu and TRU met again at TRU's headquarters in

22  Wayne, New Jersey.  Fuhu brought a NABI tablet to the meeting and demonstrated the tablet and

23  the Fuhu business model to TRU representatives.  Fuhu provided a list of NABI features and

24  functions along with a list of accessories to be rolled out in conjunction with NABI, and again

25  reviewed the business model and importance of accessories in driving profits for the NABI

26  ecosystem.

27

28

**Exclusive Distribution Agreement Between Fuhu and TRU**

51.     On about October 5, 2011 Fuhu and TRU met again in Fuhu's offices in El Segundo, California.  At the meeting, TRU offered to provide marketing and merchandising support and a volume commitment to gain exclusive distribution rights.  Fuhu displayed to TRU a model End-Cap display for NABI and all the associated accessories for TRU stores and disclosed confidential and proprietary information regarding Fuhu's strategy relating to the display.  TRU agreed to the requested commitments and to draft a contract for an exclusive retail relationship. TRU told Fuhu it believed this would be one of TRU's top products of the year, and, as press reports noted elsewhere herein (*see* Paragraph 12), TRU's prediction came true.

52.     During the meeting on October 5, 2011, Fuhu and TRU agreed orally that in exchange for exclusive distribution rights for NABI, TRU would provide substantial merchandising, marketing, and volume commitments.

53.     On about October 7, 2011 TRU provided Fuhu with a presentation regarding what TRU would do to gain exclusivity and highlighting the benefits to which TRU would commit.

54.     On about October 10, 2011, Fuhu provided TRU with a pre-release sample NABI with iconic butterfly shaped bumper and packaging for brief review on the understanding that TRU would return it promptly.  TRU kept the sample longer than agreed – purportedly to show NABI at a TRU Board Meeting – and only returned it after Fuhu repeatedly demanded its return.

55.     On about October 24, 2011 Fuhu provided TRU with a detailed list of products and accessories that are part of NABI's business plan, the reasons for each accessory, and how to instill them with the iconic NABI butterfly brand.

56.     Thereafter, the parties worked on reducing their oral agreement to writing, resulting in the document of which a true and correct copy is attached as Exhibit C ("Exclusivity Agreement").

**Retail Launch and Subsequent Events**

57.     On or about November 17, 2011, the NABI tablet was available for pre-ordering online on the TRU website, and the majority of those tablets were sold out online within a few weeks.

58.     TRU placed a purchase order on November 29, 2011, for 10,000 NABI tablets, and Fuhu started delivering the tablets on December 2, 2011.

59.     Because of such high demand for the NABI tablet, on about December 1, 2011, TRU made multiple requests to order more product with an estimated volume of 100,000 units. TRU followed up later in the week with a much smaller volume commitment, closer to 10,000 units on December 12, 2011.

60.     On about December 14, 2011, Fuhu met with TRU at TRU headquarters in Wayne, New Jersey.  Fuhu met with the sales team as well as the Accessory team for TRU.  Fuhu provided all the detailed information about the accessories Fuhu was building and launching along with trade secrets as to why they had picked these specific accessories.

61.     On about December 18, 2011 TRU started selling the NABI tablet in stores, and the majority of those tablets were sold out within a few days.

**Termination of Exclusivity**

62.     In January of 2012, Fuhu and TRU executives met at the Computer Electronics Show (CES) in Las Vegas.  Fuhu had set up an entire suite dedicated to the NABI tablet and its ecosystem.  Fuhu walked the TRU executives through the entire suite, showed them all the products, and educated them on whey they fit into the overall business plan.  Fuhu showed TRU new features and functions that were not publicly available, including their music solution and related sourcing information.  At the meeting in Fuhu's demonstration suite, Fuhu requested that TRU start to fulfill their responsibilities under the exclusivity contract and explained that very little of TRU's responsibilities were met in the areas of marketing and merchandising.

63.     Fuhu and TRU continued to correspond through email regarding TRU's responsibilities in the area of marketing and merchandising for the year 2012 as well as volume commitments.  TRU confirmed by email dated January 30, 2012, from Troy Peterson of TRU to Robb Fujioka of Fuhu, that TRU agreed "it's best to move forward with our partnership as non-exclusive" but also that TRU did "not expect to achieve the purchase amounts and marketing support under the agreement going forward".

**TRU's TABEO Tablet and Bumper – Infringements of the Iconic Butterfly Shape**

64.     As described herein, TRU entered into an exclusive contract with Fuhu to market the NABI products.  At that time, however, TRU did not yet market a tablet or tablet accessories under its own house brand, and TRU did not tell Fuhu that TRU intended to do so.

65.     About a year after Fuhu introduced its iconic butterfly shape, reflected in its butterfly trademarks and trade dress, in connection with its NABI products and packaging, and nearly a year after TRU entered into the NDA and Exclusivity Agreement with Fuhu, TRU announced its TABEO tablet on September 10, 2012.  TRU's announcement of TABEO came after significant time in which to assimilate Fuhu's proprietary information and to observe the success of Fuhu's NABI tablet in the marketplace.  The TABEO tablet currently is marketed, inter alia, online through TRU's websites as of the date of this Complaint.

66.     TRU adopted Fuhu's iconic butterfly shape and trade dress, incorporating it into the trade dress of its own bumper in order to promote its competing TABEO tablet. Specifically, TRU's TABEO tablet wears a bumper displaying flared corners (the "Infringing Trade Dress") that is identical or nearly identical to Fuhu's butterfly trademarks and trade dress. When the TABEO product is compared next to Fuhu's NABI products, as can be done easily in online retail venues, the similarities between the shapes of the respective bumpers are further emphasized. True and correct representations of the current TABEO bumper and TABEO tablet wearing the infringing TABEO bumper, as these goods appear online at www.tabeo.com, are below.





67.     Below is a true and correct representation of TRU's TABEO product bearing the Infringing Trade Dress (on the left) next to the corresponding NABI product (on the right).

 

68.     Upon information and belief, TRU began using the Infringing Trade Dress and incorporating its unique and distinctive shape on its TABEO tablet and products well after Fuhu's first use of its iconic butterfly shape in its trademarks and trade dress.

69.     Upon information and belief, TRU currently advertises, markets, has made available for "pre-sale" and imminently and impendingly will deliver, and intends to further advertise, market and sell the TABEO Products throughout the United States, including California.  Indeed, like the NABI products, TRU's TABEO products already are marketed to the same category of consumers – children.  Moreover, images of both products are available online and can be readily copied in a manner presenting them in close visual proximity to the NABI products bearing or incorporating the authentic and iconic butterfly trademarks. and trade dress.

**TRU Uses the NABI Wordmark to Advertise the TABEO Tablet and TABEO Accessories**

70.     TRU currently is not an authorized reseller of any Fuhu product, including the NABI or NABI 2.  Neither the NABI nor the NABI 2 is available from TRU, including via the TRU website at toysrus.com.

71.     Certain webpages on the website at toysrus.com, including the home page of toysrus.com, include a search bar, as can be seen below.



72.     On information and belief, when a non-descriptive, non-generic term is entered into the search bar, a "no results" page is displayed. For example, searching for "winkel" on toysrus.com on or about September 20, 2012 results in a "no results" page, as seen here:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

73.     In contrast, searching for "winkel" on Amazon's amazon.com page on or about September 20, 2012 results in the page seen here, including toys that are apparently unavailable via toysrus.com:



**FREE** Two-Day Shipping
> Join Amazon Prime Today

amazon   Your Amazon.com · Today's Deals   Gift Cards · Help

Shop by Department ▾   Search | All ▾ | winkel   [Go]   Hello. Sign In Your Account ▾   ▾ 0 Cart ▾   Wish List ▾

Gateway   Gift Certificates/Cards   International   Hot New Releases   Best Sellers   Today's Deals   Sell Your Stuff

**Department**
Toys & Games
  Baby Rattles
  Baby Activity Play Centers
  Baby Shape & Color Recognition Toys
  Balls for Babies & Toddlers
  Learning & Education Toys
**Baby**
  Baby Teether Toys
  Baby Bathing & Skin Care
**Health & Personal Care**
  Baby & Child Care Products
  → See All 21 Departments

**Shipping Option** (What's this?)
  Free Super Saver Shipping

**Listmania!**

"winkel"
Related Searches: foooo, munchkin, oball.

Showing 1 - 16 of 2,683 Results                     Choose a Department ☑ to enable sorting

**Manhattan Toy Winkel** by Manhattan Toy
~~$14.00~~ **$11.25**                     ★★★★★ ☺ (337)
Order in the next 1 hour and get it by       Manufacturer recommended age: 0 Month - 1 Year 6
Friday, Sep 21                               Months
More Buying Choices                          Toys & Games: See all 52 items
$5.00 new (20 offers)

**Manhattan Toy Color Burst Winkel In a Box** by Manhattan Toy
**$14.99**                                   ★★★★★ ☺ (24)
Only 1 left in stock - order soon.           Toys & Games: See all 52 items
More Buying Choices
$13.99 new (5 offers)

**Sassy Ring O' Links Rattle Developmental Toy** by Sassy

74.     Searching for "nabi" on toysrus.com on or about September 20, 2012 does not result in a "no results" page.  It results in the page seen here:



MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2

FUHU'S ORIGINAL COMPLAINT

75.     This first "nabi" search results page features 10 entries for the TABEO and TABEO accessories, and two entries for third party NABI competitors.

76.     The URL for the "nabi" search results page is http://www.toysrus.com/search/index.jsp?kwCatId=&kw=nabi&origkw=nabi&f=Taxonomy/TRUS/2254197&sr=1.  On information and belief, the URL's for "no results" pages are of the form http://www.toysrus.com/search/noResults.jsp?kw=<search term>.

77.     On information and belief, TRU has specifically designed and implemented toysrus.com to display non-Fuhu products, including the TABEO and other NABI competitors, in response to a user searching for NABI, as described above.  Such unauthorized use of the NABI trademark by TRU constitutes trademark infringement and, if not enjoined, will continue to damage Fuhu.

### FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

78.     Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1 through 77 as though fully set forth herein.

79.     The NDA, attached as Exhibit B, is a valid and enforceable contract.

80.     Fuhu either performed its obligations under the NDA or was legally excused from doing so.

81.     TRU did not perform its obligations under the NDA and thereby breached the NDA.

82.     TRU's breaches of the NDA caused harm to Fuhu in an amount to be proven at trial, most of which cannot be adequately compensated by monetary damages.

### SECOND CLAIM FOR RELIEF – BREACH OF
### IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

83.     Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1 through 82 as though fully set forth herein.

84.     The Exclusivity Agreement, attached as Exhibit C, is a valid and enforceable contract.

1    85.    Fuhu performed its obligations under the Exclusivity Agreement or was legally

2    excused from doing so.

3    86.    All conditions required for TRU's performance of its obligations under the

4    Exclusivity Agreement occurred.

5    87.    TRU unfairly interfered with Fuhu's right to receive the benefits of the Exclusivity

6    Agreement, including without limitation by TRU failing to provide any of the marketing and

7    merchandising support specified in Exhibits A, B, and C to the Exclusivity Agreement.

8    88.    TRU acted with bad motives or intentions and/or engaged in deception or evasion

9    in the non-performance of its obligations under the Exclusivity Agreement.

10    89.    TRU's conduct denied Fuhu the bargain initially intended by the parties in the

11    Exclusivity Agreement.  Fuhu would not have entered into the Exclusivity Agreement but for the

12    marketing and merchandising support specified in Exhibits A, B, and C to the Exclusivity

13    Agreement.

14    90.    Fuhu was harmed in an amount to be proven at trial by TRU's failure to provide

15    any of the marketing and merchandising support specified in Exhibits A, B, and C to the

16    Exclusivity Agreement.

17    **THIRD CLAIM FOR RELIEF – FRAUD**

18    91.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

19    through 90 as though fully set forth herein.

20    92.    To induce Fuhu to enter into the Exclusivity Agreement and not to sell NABI

21    through channels other than TRU, TRU represented to Fuhu that TRU would perform the

22    marketing and merchandising support specified in Exhibits A, B, and C to the Exclusivity

23    Agreement.

24    93.    TRU's representations that TRU would perform the marketing and merchandising

25    support specified in Exhibits A, B, and C to the Exclusivity Agreement were false.

26    94.    TRU knew the representations that TRU would perform the marketing and

27    merchandising support specified in Exhibits A, B, and C to the Exclusivity Agreement were false

28

1   when made and/or TRU made them recklessly and without regard for the truth and/or without any

2   reasonable ground for believing them to be true.

3        95.    TRU intended to induce Fuhu to rely on the representations that TRU would

4   perform the marketing and merchandising support specified in Exhibits A, B, and C to the

5   Exclusivity Agreement by entering into the Exclusivity Agreement and not selling NABI through

6   channels other than TRU.

7        96.    Fuhu was unaware of the falsity of TRU's representations that TRU would

8   perform the marketing and merchandising support specified in Exhibits A, B, and C to the

9   Exclusivity Agreement by entering into the Exclusivity Agreement.

10       97.    Fuhu reasonably relied on TRU's representations that TRU would perform the

11  marketing and merchandising support specified in Exhibits A, B, and C to the Exclusivity

12  Agreement by entering into the Exclusivity Agreement and not selling NABI through channels

13  other than TRU prior to the termination of TRU's exclusivity in January of 2012.

14       98.    Fuhu was harmed in an amount to be proven at trial as a result of TRU's

15  above-alleged actions.

16       99.    Fuhu's reliance on TRU's representations that TRU would perform the marketing

17  and merchandising support specified in Exhibits A, B, and C to the Exclusivity Agreement by

18  entering into the Exclusivity Agreement and not selling NABI through channels other than TRU

19  prior to the termination of TRU's exclusivity in January of 2012 was a substantial factor in

20  causing and continuing to cause harm to Fuhu.

21       **FOURTH CLAIM FOR RELIEF – TRADE SECRET MISAPPROPRIATION**

22       100.   Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

23  through 99 as though fully set forth herein.

24       101.   Fuhu owns trade secret information relating to NABI that has actual or potential

25  independent economic value because it was secret and is the subject of reasonable efforts by Fuhu

26  to maintain its secrecy, including without limitation through the NDA.  Fuhu took appropriate

27  precautions to maintain the secrecy of its trade secrets and confidential information by ensuring

28  physical security of its records, marking confidential materials with confidentiality legends,

1   including confidentiality legends in employees' email signatures, requiring employees to sign an

2   Employee Handbook containing a Confidentiality Clause and, in certain cases, a restrictive

3   covenant, and by entering into the NDA with TRU.

4         102.   Fuhu's trade secrets and/or confidential information were communicated in

5   confidence by Fuhu to TRU subject to and in reliance on the NDA.

6         103.   On information and belief, TRU improperly acquired and/or used and/or disclosed

7   Fuhu's trade secrets relating to NABI and solicited at least one customer and/or manufacturer

8   based on the misappropriated trade secrets.

9         104.   Fuhu has been harmed in an amount to be proven at trial by, and/or TRU has been

10   unjustly enriched in an amount to be proven at trial by, TRU's improper acquisition and/or use

11   and/or disclosure of Fuhu's trade secrets.

12         105.   Because TRU's misappropriation was willful and malicious, Fuhu is entitled to

13   punitive damages of twice the amount awarded for actual damages and unjust enrichment.

14         106.   Because TRU's misappropriation was willful and malicious, Fuhu is entitled to its

15   attorney's fees and the costs of this action.

16         107.   TRU's improper acquisition and/or use and/or disclosure of Fuhu's trade secrets

17   was a substantial factor in causing and continuing to cause harm to Fuhu and/or unjust enrichment

18   to TRU.

19         108.   TRU's improper acquisition and/or use and/or disclosure of Fuhu's trade secrets

20   has caused irreparable and incalculable harm to Fuhu and Fuhu is thus entitled to injunctive relief

21   prohibiting ongoing and future use by TRU of Fuhu trade secrets.

22         109.   Fuhu is entitled to injunctive relief that eliminate any commercial advantage that

23   TRU otherwise would derive from the ongoing and future use of misappropriated trade secrets

24   that have since been publicly disclosed.

25         110.   Fuhu is entitled to any and all additional remedies that may be available at

26   common law for the above-described misappropriation.

27

28

1

### FIFTH CLAIM FOR RELIEF – CONVERSION

2      111.   Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

3   through 110 as though fully set forth herein.

4      112.   Fuhu is entitled to immediate possession of its property.

5      113.   By the conduct alleged in this complaint, TRU has converted and continues to

6   convert Fuhu's property to their own use and benefit without authority to do so.

7      114.   TRU's conversion of Fuhu's property has been knowing, intentional, wanton,

8   willful and an outrageous violation of Fuhu's rights.

9      115.   As a proximate result of TRU's conversion of Fuhu's property, Fuhu has suffered

10   substantial damages in an amount to be proven at trial.

11      116.   As a proximate result of TRU's conversion of Fuhu's property, Fuhu has suffered

12   special damages in an amount to be proven at trial.

13   ### SIXTH CLAIM FOR RELIEF – FALSE DESIGNATION OF ORIGIN AND UNFAIR

14   ### COMPETITION UNDER 15 U.S.C. § 1125(a)

15      117.   Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

16   through 116 as though fully set forth herein.

17      118.   TRU's conduct alleged herein constitutes use in commerce of certain words,

18   names and false designations of origin in connection with the sale and advertising of unauthorized

19   goods, which create a likelihood of confusion, mistake or deception as to the affiliation,

20   connection or association of TRU with Fuhu, or as to the origin, sponsorship or approval of

21   TUR's goods with those of Fuhu.  TRU's conduct is likely to induce consumers to believe,

22   contrary to fact, that the goods and services of TRU are rendered, sponsored, sold, approved by or

23   connected with Fuhu.

24      119.   TRU's conduct is without Fuhu's permission or authority.   In addition, TRU has

25   committed the foregoing acts with full knowledge of Fuhu's rights in its iconic butterfly shape,

26   reflected in its trademarks.  Thus, TRU has willfully, deliberately and maliciously engaged in

27   these acts with the intent to compete unfairly with Fuhu.

28

1      120.    TRU's unauthorized use of the iconic butterfly shape as reflected in the butterfly

2   trademarks, constitutes false designation of origin and unfair competition in violation of 15

3   U.S.C. § 1125(a).

4      121.    This is an exceptional case under 15 U.S.C. § 1117(a).

5      122.    TRU's conduct has caused damage to Fuhu in an amount to be determined at trial,

6   and, unless restrained, will continue to seriously and irreparably impair further the value of

7   Fuhu's iconic butterfly shape, including as reflected in Fuhu's butterfly trademarks, for which

8   there is no adequate remedy at law.

9      123.    In light of the foregoing, Fuhu is entitled to injunctive relief prohibiting TRU from

10   using the butterfly trademarks mark or any mark confusingly similar to Fuhu's butterfly

11   trademarks for any purpose, and to recover from TRU all damages, including attorneys' fees, that

12   Fuhu has sustained and will sustain as a result thereof, in an amount not yet known, but which

13   circumstances warrant trebling pursuant to 15 U.S.C. § 1117, as well as the costs of this action.

14          **SEVENTH CLAIM FOR RELIEF – TRADE DRESS INFRINGEMENT**

15                    **UNDER 15 U.S.C. § 1125(A)**

16      124.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

17   through 123 as though fully set forth herein.

18      125.    Fuhu's iconic butterfly shape including as embodied in its butterfly trade dress is

19   inherently distinctive and has acquired secondary meaning.

20      126.    The butterfly trade dress is nonfunctional.

21      127.    TRU has infringed and will continue to infringe Fuhu's butterfly trade dress by

22   copying and incorporating the elements of that trade dress into its TABEO Products.

23      128.    TRU's production, marketing, and sale of the TABEO Products and the trade dress

24   embodied therein create a likelihood of confusion, mistake, or deception as to the source, origin,

25   sponsorship or approval of TRU's goods.  The trade dress of the TABEO Products is likely to

26   induce consumers to believe, contrary to fact, that TRU's goods are rendered, sponsored, sold,

27   approved by, or connected with Fuhu.

28

129.   TRU's production, marketing, advertising, "pre sale" and impending delivery and imminently impending further sale of the trade dress embodied in the TABEO Products are without Fuhu's consent or authority and commenced after the date of Fuhu's first use of its distinctive iconic butterfly shape and its buttefly trade dress.  TRU has committed its infringement with full knowledge of Fuhu's rights in its butterfly trade dress.  Moreover, TRU has willfully, deliberately, and maliciously engaged in the described acts with intent to injure Fuhu and to deceive the public.

130.   TRU's acts alleged herein have been and are being committed with the intent and purpose of appropriating and trading upon the goodwill and reputation associated with Fuhu and its iconic butterfly shape and butterfly trade dress and have damaged and impaired and continue to damage and impair that part of Fuhu's goodwill symbolized by the butterfly trade dress, to Fuhu's immediate and irreparable harm.

131.   TRU's unauthorized production, advertising, marketing, "pre sale" and imminent and impending delivery and further sale of its TABEO Products, which bear trade dress confusingly similar to the butterfly trade dress, constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

132.   This case constitutes an exceptional case under 15 U.S.C. § 1117(a).

133.   TRU's wrongful conduct has caused damage to Fuhu's business reputation and goodwill, and unless restrained and enjoined, will continue to seriously and irreparably impair the value of the butterfly trade dress for which there is no adequate remedy at law.

134.   Fuhu is entitled to injunctive relief prohibiting TRU from using the trade dress currently embodied in the TABEO Products pursuant to 15 U.S.C. § 1116.

135.   As a direct and proximate result of TRU's trade dress infringement, Fuhu has been damaged in an amount to be proved at trial.

**EIGHTH CLAIM FOR RELIEF – STATE TRADEMARK INFRINGEMENT UNDER**

**CAL. BUS. & PROF. CODE § 14335**

136.   Fuhu repeats and realleges paragraphs 1 through 135 of this complaint as if fully set forth herein.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

304768903.2

31

FUHU'S ORIGINAL COMPLAINT

137.    Defendant's conduct alleged herein constitutes use of colorable imitations of Fuhu's iconic butterfly shape and its butterfly trademarks in connection with the advertising and sale and imminent and impending delivery and further sale of Defendant's goods in commerce. Such acts create a likelihood of confusion, mistake or deception as to the affiliation, connection or association of TRU with Fuhu, or as to the origin, sponsorship or approval of TRU's goods by Fuhu.

138.    TRU's conduct is without Fuhu's permission or authority.  TRU has committed its infringement with full knowledge of Fuhu's rights in the iconic butterfly shape and the butterfly trademarks.  Thus, Defendant has willfully, deliberately and maliciously engaged in the described acts with an intent to injure Fuhu and to deceive the public.

139.    TRU's conduct has been and is being committed with the intent and purpose of appropriating and trading upon the goodwill and reputation associated with Fuhu's iconic butterfly shape and butterfly trademarks.

140.    TRU's unauthorized use of the iconic butterfly shape and butterfly trademarks constitutes trademark infringement in violation of Cal. Bus. & Prof. Code § 14335.

141.    TRU's conduct has caused damage to Fuhu in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair further the value of Fuhu's iconic butterfly shape and the butterfly trademarks, for which there is no adequate remedy at law.

142.    In light of the foregoing, Fuhu is entitled to injunctive relief prohibiting TRU from using the iconic butterfly shape and butterfly trademarks or any mark confusingly similar to the butterfly trademarks for any purpose.

**NINTH CLAIM FOR RELIEF – COMMON LAW TRADEMARK INFRINGEMENT**

143.    Fuhu repeats and realleges paragraphs 1 through 142 of this complaint as if fully set forth herein.

144.    TRU's activities alleged herein have violated Fuhu's trademark rights under the common law.

145.    As a direct result of TRU's actions, TRU has been unjustly enriched through fraudulent conversion to their own profits of Fuhu's goodwill and its rights in the iconic butterfly

1    shape and the butterfly trademarks through the sale of infringing products, and has caused Fuhu

2    to lose sales of its genuine products.

3        146.    TRU's conduct has caused damage to Fuhu in an amount to be determined at trial,

4    and unless restrained, will continue to seriously and irreparably impair further the value of the

5    iconic butterfly shape and butterfly trademarks, for which there is no adequate remedy at law.

6        147.    In light of the foregoing, Fuhu is entitled to injunctive relief prohibiting TRU from

7    using the iconic butterfly shape and butterfly trademarks or any mark confusingly similar to the

8    butterfly trademarks for any purpose, and to recover from TRU all damages, including attorneys'

9    fees, that Fuhu has sustained and will sustain as a result thereof, as well as the costs of this action.

10   **TENTH CLAIM FOR RELIEF – COMMON LAW TRADE DRESS INFRINGEMENT**

11       148.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

12   through 147 as though fully set forth herein.

13       149.    This claim arises under the common law of this state and is for unfair competition,

14   including trade dress infringement.

15       150.    As set forth more fully above, the iconic butterfly design as reflected in the

16   butterfly trade dress is inherently distinctive and has acquired secondary meaning.

17       151.    By virtue of TRU's acts as pleaded above, TRU has infringed the butterfly trade

18   dress.

19       152.    TRU's conduct has caused damage to Fuhu in an amount to be determined at trial,

20   and unless restrained, will continue to seriously and irreparably further impair the value of the

21   iconic butterfly shape and butterfly trade dress, for which there is no adequate remedy at law.

22       153.    In light of the foregoing, Fuhu is entitled to injunctive relief prohibiting TRU from

23   using the iconic butterfly shape and butterfly trade dress for any purpose, and to recover from

24   TRU all damages, including an accounting of profits and disgorgement thereof and attorneys'

25   fees, that Fuhu has sustained and will sustain as a result thereof, as well as the costs of this action.

26       154.    TRU's wrongful conduct has caused damage to Fuhu and, unless restrained and

27   enjoined, will continue to seriously and irreparably impair Fuhu, for which there is no adequate

28   remedy at law.

155.   In light of the foregoing, Fuhu is entitled to an accounting of profits and disgorgement thereof.

### ELEVENTH CLAIM FOR RELIEF – TRADEMARK INFRINGEMENT

156.   Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1 through 155 as though fully set forth herein.

157.   NABI is a valid and distinctive trademark of Fuhu.

158.   Fuhu has priority of use over TRU for the NABI trademark.

159.   TRU is not authorized to use the NABI trademark.

160.   TRU is using the NABI trademark in commerce, in connection with the sale of goods and services, as described above.

161.   On information and belief, TRU continues to use and update toysrus.com

162.   On information and belief, TRU has specifically associated its TABEO tablet and associated accessories with the NABI trademark and continues to do so, as set forth more fully above.

163.   TRU's has used and continues to use NABI in such a manner to cause a likelihood of confusion, mistake, or deception as to either TRU's connection with FUHU or the origin, sponsorship, or approval of TRU's goods or services.

164.   TRU has used and continues to use NABI in such a manner that has harmed and continues to harm Fuhu.

165.   TRU will continue to infringe the NABI word trademark unless enjoined by this court.

166.   In light of the foregoing, Fuhu is entitled to injunctive relief prohibiting TRU from using the NABI word trademark or any mark confusingly similar to NABI wordmark for any purpose, and to recover from TRU all damages, including attorneys' fees, that Fuhu has sustained and will sustain as a result thereof, as well as the costs of this action.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2

34

FUHU'S ORIGINAL COMPLAINT

### TWELFTH CLAIM FOR RELIEF – FALSE ADVERTISING

### UNDER THE LANHAM ACT

167.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1 through 166 as though fully set forth herein.

168.    TRU has unlawfully made false representations of fact about its TABEO products and about Fuhu's NABI products, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).  Fuhu, a competitor of TRU in the child tablet market, has lost customers and revenue due to the unlawful actions of TRU.

169.    In connection with the promotion of its tablet product and third party tablet products, TRU has made a number of false or misleading representations of fact about its own products.

170.    On information and belief and as set forth more fully above, when customers search for a term or item that is not available through www.toysrus.com, a "no results" page is typically displayed.

171.    But, as set forth more fully above, searching for "nabi" on the TRU webpage at www.toysrus.com results in a page with TABEO and third party tablet products.  Although the page states that the search was for "nabi", no Fuhu or NABI products are displayed and none are available from TRU through www.toysrus.com.

172.    Through the behavior of TRU's website at www.toysrus.com and through the display of affirmative search results when "nabi" is searched for, including a reminder on the resulting page that "nabi" was the search term, TRU is presenting false and/or misleading information.

173.    TRU's false advertising has irreparably and incalculably harmed Fuhu's reputation, and has caused incalculable amounts of lost sales for Fuhu.

174.    On information and belief, Fuhu has been irreparably and incalculably damaged by the reliance of consumers and reviewers on TRU's false and/or misleading statements.

175.    On an ongoing basis, TRU is using false advertising to siphon off Fuhu's market share in the children's tablet market.  This also deprives Fuhu of ecosystem related benefits,

1   including revenue and customer loyalty.  TRU's misconduct has cost and is costing Fuhu

2   substantial sums in lost revenue.

3        176.    TRU's advertising and website in connection with its TABEO products and with

4   third party tablet products, as set forth above, is use in commercial advertising or promotion of

5   false and/or misleading descriptions of fact that misrepresent the characteristics and qualities of

6   Fuhu's goods and TRU's goods.  These false and/or misleading descriptions of fact actually

7   deceived or tended to deceive a substantial number of consumers and were material to

8   consumers' purchasing decisions.  In addition, these false and/or misleading descriptions of fact

9   continue to actually deceive or tend to deceive a substantial number of consumers and continue to

10   be material to consumers' purchasing decisions.

11        177.    On information and belief, TRU's acts of false advertising described herein were

12   intended to cause and did in fact cause deception of the public, misleading prospective purchasers

13   as to the true characteristics and qualities of TRU's and Fuhu's products.

14        178.    As a result of TRU's acts described above, Fuhu has suffered and will continue to

15   suffer irreparable harm in the form of damage and injury to its business, reputation and good will.

16   TRU will continue to sustain serious loss of revenues, profits and market share unless TRU is

17   preliminarily and permanently restrained and enjoined by the Court from further false advertising.

18        179.    This case constitutes an exceptional case under 15 U.S.C. § 1117(a).

19        180.    In light of the foregoing, Fuhu is entitled to injunctive relief prohibiting TRU from

20   using the NABI word trademark or any mark confusingly similar to the NABI word trademark for

21   any purpose, and to recover from TRU all damages, including attorneys' fees, that Fuhu has

22   sustained and will sustain as a result thereof, as well as the costs of this action.

23      **THIRTEENTH CLAIM FOR RELIEF – COMMON LAW UNFAIR COMPETITION**

24        181.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

25   through 180 as though fully set forth herein.

26        182.    TRU's conduct alleged herein constitutes use of colorable imitations of Fuhu's

27   Flared Corner Trade Dress in connection with the advertising, pre-sale, and/or sale of

28   unauthorized products in commerce.  These activities create a likelihood of confusion, mistake or

1   deception as to the affiliation, connection, or association of TRU with Fuhu, or as to the origin,

2   sponsorship, or approval of TRU's products by Fuhu.  TRU's conduct is likely to induce

3   consumers to believe, contrary to fact, that TRU's products are rendered, sponsored, sold,

4   approved by, or connected with Fuhu.

5        183.    TRU's conduct is willful, deliberate, and intended to confuse the public and injure

6   Fuhu; further, TRU's conduct is oppressive and malicious in that it is intended to injure Fuhu and

7   is carried on by TRU with a willful and conscious disregard of the rights of others.

8        184.    TRU's conduct constitutes unfair competition under California common law.

9        185.    TRU's conduct has caused damage to Fuhu in an amount to be determined at trial,

10   and unless restrained, will continue to seriously and irreparably further impair the value of the

11   Flared Corner Trade Dress, for which there is no adequate remedy at law.

12        186.    In light of the foregoing, Fuhu is entitled to injunctive relief prohibiting TRU from

13   using the Flared Corner Trade Dress for any purpose, and to recover from TRU all damages,

14   including an accounting of profits and disgorgement thereof and attorneys' fees, that TRU has

15   sustained and will sustain as a result thereof, as well as the costs of this action.

16   **FOURTEENTH CLAIM FOR RELIEF – UNFAIR COMPETITION UNDER**

17   **CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**

18        187.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

19   through 186 as though fully set forth herein.

20        188.    California Business and Professions Code § 17200, et seq., states that unfair

21   competition shall mean and include any "unlawful, unfair or fraudulent business act or practice."

22        189.    TRU's' acts complained of herein constitute trade dress infringement under 15

23   U.S.C. § 1125(a).  TRU's acts complained of herein also constitute willful and deliberate unfair

24   business acts and/or practices under Cal. Bus. & Prof. Code § 17200 in wanton disregard of

25   Fuhu's valuable intellectual property rights.

26        190.    TRU's conduct has directly and proximately caused and will continue to cause

27   Fuhu substantial and irreparable injury, including customer confusion, injury to its reputation, and

28   diminution in value of its intellectual property and unless restrained, will continue to seriously

1    and irreparably further impair the value of the Flared Corner Trade Dress, for which there is no

2    adequate remedy at law.

3        191.    In light of the foregoing, Fuhu is entitled to an injunction under Cal. Bus. & Prof.

4    Code § 17200 et seq. restraining TRU from engaging in further such unlawful conduct, as well as

5    to restitution of those amounts unlawfully obtained by TRU through its wrongful conduct in an

6    amount to be proven at trial.

7                    **FIFTEENTH CLAIM FOR RELIEF – UNJUST ENRICHMENT**

8        192.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1

9    through 191 as though fully set forth herein.

10       193.    Fuhu has made a substantial investment of time, money, and effort in promoting its

11   products under the Flared Corner Trade Dress. The Flared Corner Trade Dress has become an

12   asset of substantial value to Fuhu and symbolic of Fuhu's goodwill.

13       194.    By willfully infringing on the Flared Corner Trade Dress, TRU has received a

14   benefit in that it has received business by virtue of, among other things, consumers' perceived but

15   false association with Fuhu, and as such, TRU has been unjustly enriched.

16       195.    TRU's use of trade dress that is confusingly similar to the Flared Corner Trade

17   Dress has allowed it to knowingly and willfully receive a benefit that in justice and equity

18   belongs to Fuhu.

19       196.    It will be unjust and inequitable for TRU to benefit from its use of the Flared

20   Corner Trade Dress embodied in the TABEO Products without payment and/or reimbursement to

21   Fuhu.

22       197.    By reason of TRU's conduct, Fuhu is suffering and will continue to suffer

23   irreparable harm unless and until enjoined and restrained by order of this Court.

24       198.    As a direct and proximate result of TRU's actions, Fuhu is entitled to restitution of

25   those amounts by which TRU was unjustly enriched through its wrongful conduct, said amounts

26   to be proven at trial.

27       199.    In light of the foregoing, Fuhu is entitled to an accounting of profits and

28   disgorgement thereof.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2                              38                    FUHU'S ORIGINAL COMPLAINT

**SIXTEENTH CLAIM FOR RELIEF – REPLEVIN**

200.    Fuhu repeats and realleges each and every allegation of the foregoing paragraphs 1 through 199 as though fully set forth herein.

201.    Pursuant to Paragraph 5 of the NDA, attached as Exhibit B, Fuhu has right, title and interest in and to any and all TABEOs manufactured by or for TRU.

202.    TRU, through press releases, advertising, and the taking of pre-orders, has unlawfully exercised dominion and control of Fuhu's TABEOs.

203.    Upon information and belief, each TABEO is a development, invention, and/or improvement that resulted from TRU's review of Confidential Information owned by Fuhu and disclosed by Fuhu to TRU subject to the NDA.

204.    At all relevant times, Fuhu has retained its rights and titles to the TABEOs.

205.    TRU has willfully or negligently deprived Fuhu of its right to possession of the TABEOs.

206.    TRU has exercised dominion over the TABEOs in a manner inconsistent with Fuhu's right of possession and ownership.

207.    TRU's conduct has proximately caused and continues to cause damage to Fuhu.

208.    Fuhu seeks a Writ of Replevin ordering TRU to surrender possession to Fuhu (the owner or assignee of all rights, title, and interest) of certain equipment, namely TABEO tablets, legally owned by Fuhu and currently in the possession or control of TRU.

209.    Fuhu seeks the entry of a Temporary Restraining Order ("TRO") maintaining the status quo and restraining TRU, and any persons acting in concert with it, from transferring, transporting, damaging, destroying, tampering with, or otherwise injuring Fuhu's TABEOs.

**PRAYER FOR RELIEF**

WHEREFORE, Fuhu prays that this Court enter judgment against TRU as follows:

1.    That Fuhu shall be awarded at least the following relief:

    (i)    damages according to proof at trial, including compensatory, punitive and/or treble damages,

    (ii)    injunctive relief,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

304768903.2

39

FUHU'S ORIGINAL COMPLAINT

| | | |
|---|---|---|
| 1 | (iii) | equitable relief (including but not limited to a constructive trust), |
| 2 | (iv) | restitution as provided by law, |
| 3 | (v) | a Writ of Replevin ordering TRU to immediately surrender possession or |
| 4 | | control of the TABEOs to Fuhu; |
| 5 | (vi) | a Temporary Restraining Order ("TRO") and preliminary and permanent |

(i) injunctive relief maintaining the status quo and restraining TRU and its officers, agents, employees, and attorneys, and any persons acting in concert with them and/or who receive actual notice of the order by personal service or otherwise, from using Fuhu's trade secrets and from selling, pre-selling, advertising, transporting, damaging, destroying, moving, tampering with, or otherwise injuring the TABEOs until Fuhu is able to take physical possession of the TABEOs; and

(vii) a judgment in favor of Fuhu against TRU on all causes of action herein.

2. That an accounting by accountants of Fuhu's choice be ordered by the Court at the expense of TRU.

3. That Fuhu recover its costs of this suit, including reasonable attorneys' fees, as provided by law.

4. That Fuhu be granted such other, further and different relief as the nature of the case may require or as may seem just and proper to this Court.

**JURY DEMAND**

Fuhu hereby demands a trial by jury of all issues triable by jury.

Dated:   September 24, 2012          MANATT, PHELPS & PHILLIPS, LLP

By: _____
Ronald S. Katz
*Attorneys for Plaintiff*
FUHU, INC.