1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FUHU, INC., FUHU HOLDINGS, INC., | CASE NO. 012cv2308 WQH-WVG |
| Plaintiffs, | ORDER |
| vs. | |
| TOYS "R" US, INC., TOYS "R" US - DELAWARE, INC., | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Ex Parte Application for Temporary Restraining Order and Order to Show Cause for Issuance of Preliminary Injunction filed by Plaintiffs Fuhu, Inc. and Fuhu Holdings, Inc. ("Fuhu"). (ECF No. 11). Also before the Court are the Motion to Exclude the Declaration of William Bleuel (ECF No. 35) and Motion to Strike the Reply Declaration of James Mitchell (ECF No. 83) filed by Defendants Toys "R" Us, Inc. and Toys "R" Us - Delaware, Inc. ("TRU").

**BACKGROUND**

On September 24, 2012, Plaintiffs initiated this action by filing a Complaint against Defendants, asserting the following claims for relief: breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, trade secret misappropriation, conversion, false designation of origin, trade dress infringement, trademark infringement, common law trademark infringement, common law trade dress infringement, false advertising, unfair competition, common law unfair competition, unjust enrichment, and replevin. (ECF No. 1).

Plaintiffs allege that "Fuhu, Inc., is the creator of NABI, the world's first full-featured Android tablet made especially for kids." *Id.* at 2. Plaintiffs met with TRU, a large toy retailer, several times in September and October 2011 to discuss the NABI product including business strategy, marketing, and rollout plans. On September 28, 2011, the parties signed a non-disclosure agreement ("NDA") which states, in relevant part:

> 1. Each party acknowledges that all of the information provided to the other party (the "Receiving Party") is confidential, proprietary and a trade secret of the party disclosing such information (the "Disclosing Party")....
> 4. The Receiving Party's obligation regarding the Confidential Information shall not apply to Confidential Information, which ...
>> a. was already known to the Receiving Party prior to disclosure of it to the Receiving Party by the Disclosing Party...
>> d. was known to the public or generally available to the public prior to the date of disclosure by the Disclosing Party; ...
>> f. is independently developed by the Receiving Party....
> 8.... If the Receiving Party breaches this Agreement or discloses any Confidential Information other than as permitted by this Agreement, the Disclosing Party shall suffer immediate and irreparable harm for which money damages shall not constitute a full and adequate remedy....

(ECF No. 50). On October 29, 2011, the parties signed an exclusive distribution agreement ("Exclusivity Agreement") under which TRU would be the exclusive distributor of NABI. Under the terms of the Exclusivity Agreement, TRU agreed to place orders for 10,000 NABI tablets by December 31, 2011, and to place orders for 500,000 more NABI tablets throughout 2012. TRU also agreed to undertake specific marketing and merchandising actions to support the NABI sales in their stores. In January 2012, Plaintiffs terminated the Exclusivity Agreement with Defendants.

Plaintiffs allege that "on September 10, 2012, TRU announced with great fanfare its 'proprietary' tablet for children, TABEO." (ECF No. 1 at 2). Plaintiffs allege that "[t]he TABEO product and related marketing bear a striking and not coincidental similarity to Fuhu's NABI product and the collateral proprietary information that Fuhu disclosed to TRU under strict confidentiality. TRU used Fuhu's trade secrets and confidential information to start selling TABEO, which systematically attempts to replicate the NABI experience ...." *Id.* at 4. Plaintiffs allege that "TABEO not only is confusingly similar to NABI's iconic butterfly shape reflected in the Nabi trademarks and trade dress, but also TRU's advertising and promotional materials are derived from the business plan Fuhu shared with TRU on a basis of strict

confidentiality." *Id.*  Plaintiffs allege that "TRU has used and continues to use Fuhu's confidential information, trade secrets,  and other intellectual property [regarding NABI] to prepare, market, and sell TABEO." *Id.*

On September 25, 2012, Plaintiffs filed an Ex Parte Motion for Temporary Restraining Order and Order to Show Cause for Issuance of Preliminary Injunction.  (ECF No. 11). Plaintiffs seek a temporary restraining order enjoining Defendants:

> (1) from taking pre-orders from consumers for: (i) the TABEO product (or ... the functional equivalent ...) or (ii) the TABEO product's bumper with flared corners (or ... the functional equivalent ...);
> (2) from selling to consumers or otherwise delivering to consumers (i) the TABEO product (or ... the functional equivalent ...) or (ii) the TABEO product's bumper with flared corners (or ... the functional equivalent ...);
> (3) from having the word "nabi," which is trademarked to Fuhu (NABI), included in any keyword search functionality for any website controlled by TRU (including but not limited to www.toysrus.com) .... ;
> (4) from further using any of Fuhu's trade secrets and other confidential information disclosed to TRU pursuant to the parties' Non-Disclosure Agreement, including in marketing materials promoting the TABEO product (or ... the functional equivalent ...);
> (5) from further infringing Fuhu's Flared Corner Trade Dress, including in marketing materials promoting the TABEO product (or ... the functional equivalent ...).

*Id.* at 2.  Plaintiffs seek this injunction on the merits of their claims for trade secret misappropriation, trade dress infringement, and trademark infringement.

On October 4, 2012, Defendants filed an opposition and a motion to exclude the declaration of William Bleuel filed in support of Plaintiffs' motion.  (ECF Nos. 35, 39).  On October 10, 2012, Plaintiff filed a reply.  (ECF No. 74).  On October 13, 2012, Defendants filed a motion to strike the declaration of James Mitchell filed in support of the reply.  (ECF No. 83).  On October 17, 2012, the Court heard oral argument on the motion.  (ECF No. 94).

## DISCUSSION

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted).  When the nonmovant has received notice, as here, the standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party seeking preliminary injunctive relief has the burden to show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The Court of Appeals for the Ninth Circuit has articulated a standard "under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1131 (9th Cir. 2010) (citation omitted).  The test applies a sliding scale approach in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*; *see also Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (holding that the sliding scale approach to preliminary injunctions continues to be viable after *Winter* "so long as a certain threshold showing is made on each [*Winter*] factor").

The Court of Appeals for the Ninth Circuit has held that, in a trademark infringement claim, irreparable injury may be presumed from a showing of likelihood of success on the merits.  *El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1038 (9th Cir. 2003), quoting *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 n.4 (9th Cir. 2000); *see also Marilyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 877 (9th Cir. 2009) (upholding district court's finding of irreparable harm in trademark infringement matter when party is likely to prevail on merits).

**A.    Likelihood of Success on the Merits**

**1.    Trade Secret Misappropriation**

Plaintiffs contend that their business plans and related strategies for NABI were developed through great expense and effort, and qualify as trade secrets.  Plaintiffs contend that NABI has a uniquely branded ecosystem, including hardware, software, content and service bundles, accessories, application stores, parental controls, marketing strategy and merchandising, that was discussed in detail with Defendants along with planned technical features and implementation for the tablet.  Plaintiffs contend that Defendants purposefully

misappropriated Plaintiffs' confidential business plans for NABI, which were disclosed to Defendants in strict confidence, to assist them in the development and marketing of TABEO. Plaintiffs contend that Defendants used Plaintiffs' trade secrets to develop their own children's tablet and that the advertising and promotional materials for TABEO were derived from Plaintiffs' business plan for NABI.

Defendants contend that the information Plaintiffs shared with them regarding business strategies and product ideas was publicly-available and already well known within the retail consumer electronics community. Defendants contend that children's tablets and accessories were already sold on the market when Fuhu and TRU first met, and that TRU had been independently developing their own children's tablet before meeting with Fuhu. Defendants contend that Fuhu is an electronic software company with no experience in marketing or product design, and that Fuhu did not disclose any marketing or product design trade secret information to TRU in their 2011 meetings.

To prevail on a claim for misappropriation of trade secret under New Jersey law[1], the trade secret owner must establish that: (1) a trade secret exists; (2) information comprising a trade secret was communicated in confidence; (3) the secret information was disclosed in breach of that confidence; (4) the secret information was acquired by someone else with knowledge of the breach; (5) the secret information was used to the detriment of the trade secret owner; and (6) the trade secret owner took precautions to maintain the secrecy of the trade secret. *Rycoline Products, Inc. v. Walsh,* 334 N.J. Super. 62, 71 (N.J.Super.A.D. 2000). The subject matter of trade secret must not be a matter of public or general knowledge within an industry. *Sun Dial Corp. v. Rideout,* 16 N.J. 252, 257 (N.J. 1954). "A trade secret may also include pricing and marketing techniques." *Communications Workers of Am. v. Rousseau,* 417 N.J.Super. 341, 361 (N.J.Super.A.D. 2010). However, "the definition of trade secret does not

---

[1]The NDA states that "[t]his agreement shall be governed by and construed in accordance with the internal laws of the State of New Jersey." (Compl. Exh. B; ECF No. 50). Defendants argue that the Exclusivity Agreement supercedes the NDA, and that the terms of the Exclusivity Agreement state that California law shall apply to any disputes between the parties. However, both parties apply New Jersey law in discussing Plaintiffs' claim for trade secret misappropriation.

include a marketing concept or a new product idea." *Johnson v. Benjamin Moore & Co.,* 347 N.J.Super. 71, 96 (N.J.Super.A.D. 2002) (finding that plaintiff's "broad concept of marketing materials for murals for the masses are not trade secrets.").

In order to identify the trade secrets conveyed to TRU, Plaintiffs submit a chart prepared by Fuhu CEO James Mitchell titled "Summary of Trade Secrets Fuhu Provided to TRU." (ECF No. 13-8). Plaintiffs also submit a "List of [NABI] Products and Accessories" that was emailed to Defendants in October 2011. (ECF No. 13-4). The "Summary of Trade Secrets Fuhu Provided to TRU" contains general business strategies for the NABI including the broad principles of "Volume, Quality, Accessories, Category Dominance, and Digital Distribution" to be applied in marketing a new product. (ECF No. 13-8). The Court concludes that the concepts and ideas that Plaintiffs have identified as "trade secrets," summarized in Exhibit G to James Mitchell's declaration, are general business concepts and broad marketing ideas that do not fit within the definition of trade secret under New Jersey law. *See Benjamin Moore & Co.,* 347 N.J.Super. at 96. Based on the evidence in the record, Plaintiffs have failed to meet their burden of showing a likelihood of success on the merits of their claim for trade secret misappropriation.

### 2.   Trade Dress Infringement

Plaintiffs contend that they have common law trade dress rights to the shape of NABI "bumpers," or flexible contoured covers for the tablet. Plaintiffs contend that their use of the butterfly-shaped NABI bumper is non-functional and that the bumper shape has acquired secondary meaning in the market. Plaintiffs contend that secondary meaning is established by traffic to their website, the popularity of their facebook page, and NABI sales to date. Plaintiffs contend that the shape of TABEO is similar to the shape of NABI and will cause confusion in the minds of consumers between the two products. Plaintiffs contend that TRU infringed on Plaintiffs' distinctive trade dress for the butterfly-shaped, flared corners of the NABI bumper when they designed the TABEO bumper.

Defendants contend that Plaintiffs cannot establish any protectable trade dress in the NABI bumper or any likelihood of confusion in the market between NABI and TABEO.

Defendants contend that the shape of the NABI bumper is inherently functional to protect the tablet from damage. Defendants contend that Plaintiff has submitted no evidence to carry its burden to show that the NABI bumper has acquired secondary meaning among consumers. Defendants contend that the functional shape and design of the NABI bumper is similar to many other bumpers on the market created to provide the same functional purpose.

"Trade dress refers to the total image of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 n.3 (9th Cir. 1998). To establish trade dress infringement, a claimant must show: (1) that its product design is non-functional, (2) that the design is inherently distinctive or has acquired a secondary meaning, and (3) that there is a likelihood of confusion. *Cont'l Lab. Products, Inc. v. Medax Int'l, Inc.*, 114 F.Supp.2d 992, 997 (S.D. Cal. 2000); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210 (2000) ("The text of § 43(a) provides little guidance as to the circumstances under which unregistered trade dress may be protected. It does require that a producer show that the allegedly infringing feature is not 'functional,' ... and is likely to cause confusion with the product for which protection is sought .... [A] product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning").

To determine whether a product's trade dress design is functional, the Court may consider four factors: (1) whether the trade dress yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture. *Disc Golf Ass'n,* 158 F.3d at 1006. "If a seller advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of functionality." *Id.* at 1009, citing McCarthy on Trademarks and Unfair Competition § 7:74 at 7-152. There is evidence in the record that the NABI bumper, like contoured covers available as accessories to other tablets, serves to protect the tablet from damage. Based on the evidence in the record, the Court concludes that Plaintiffs have failed to show that the design of the NABI bumper is non-functional.

Secondary meaning exists when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal-Mart Stores*, 529 U.S. at 211. To show secondary meaning, a plaintiff must demonstrate a mental recognition in buyers' minds that products connected with the mark are associated with the same source. *Art Attacks Ink, LLC v. MGA Entertainment Inc.,* 581 F.3d 1138, 1145 (9th Cir. 2009). Direct evidence of secondary meaning, such as consumer surveys and consumer testimony, provides the strongest evidence of secondary meaning. *Cont'l Lab. Prod.*, 114 F.Supp.2d at 1000. Secondary meaning may also be established through circumstantial evidence such as "exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiffs established place in the market." *Id.* "[P]laintiff bears the burden of showing its... design obtained secondary meaning before the defendant commenced its allegedly infringing activities." *Id.* at 999. The Court concludes that Plaintiffs have failed to submit direct or circumstantial evidence sufficient to show that the design of the NABI bumper has obtained secondary meaning in the consumer market. Based on the evidence in the record, Plaintiffs have failed to meet their burden of showing a likelihood of success on the merits of their claim for trade dress infringement.

### 3.   Trademark Infringement

Plaintiffs contend that Defendants infringed the NABI work mark because online search results for "nabi" on the TRU web page yield images of TABEO products and accessories. Plaintiffs submit a screen shot of the Toys "R" Us webpage after the word "nabi" has been entered into the website's search screen. (Mitchell Decl. ¶ 116; ECF No. 13-1). The results show three different brands of children's tablets, including TABEO, and numerous TABEO accessories. Plaintiffs contend that this demonstrates Defendants' intent to trade off the goodwill and reputation of the NABI mark in marketing TABEO product and accessories.

Defendants contend that their products do not use any of Plaintiffs' trademarks and that Plaintiffs cannot identify any TRU product that violates the NABI mark. Defendants contend that there is no confusion among consumers between NABI and TABEO. Defendants assert that they have changed their online search features to yield no results when the word "nabi"

is entered into the search field.

To establish a trademark infringement claim under the Lanham Act, plaintiff must establish that defendant is using a mark confusingly similar to a valid, protectable trademark of the plaintiff. *Brookfield Communications, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir. 1999). The test for likelihood of confusion in a trademark infringement action is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks. *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1140 (9th Cir. 2002).

Plaintiffs do not provide any evidence that Defendants used the word "nabi" or the circular splatter design on any TRU product. Plaintiffs have shown that, at the time their motion for temporary restraining order was filed, a search for "nabi" on TRU's website yielded results of TABEO and other children's tablets available for sale. Plaintiffs have not provided evidence of customer confusion when viewing TRU's website for children's tablets. Based on the evidence in the record, Plaintiffs have failed to meet their burden of showing a likelihood of success on the merits of their claim for trademark infringement of the Nabi mark.

**B.    Irreparable Harm**

In a trademark infringement claim, irreparable injury may be presumed from a showing of likelihood of success on the merits. *Hashim,* 316 F.3d at 1038. Plaintiffs have failed to meet their burden of showing a likelihood of success on the merits of their claims for trade secret misappropriation, trade dress infringement, and trademark infringement. Accordingly, there is no presumption of irreparable harm.

**CONCLUSION**

IT IS HEREBY ORDERED that the Ex Parte Application for Temporary Restraining Order and Order to Show Cause for Issuance of Preliminary Injunction filed by Plaintiffs Fuhu, Inc. and Fuhu Holdings, Inc. (ECF No. 11) is DENIED.

///

///

///

1    IT IS FURTHER ORDERED that the Motion to Exclude the Declaration of William

2    Bleuel (ECF No. 35) and Motion to Strike the Reply Declaration of James Mitchell (ECF No.

3    83) are DENIED as moot.

4    DATED:  October 19, 2012

5                                              *William Q. Hayes*

6                                              **WILLIAM Q. HAYES**
                                               United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28